**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MICHAEL SIMPSON,

                              Plaintiff,

              v.                                                    No. 9:15-CV-180
                                                                    (DNH/CFH)

LT. MICHAEL OVERBAUGH; et al.,

                              Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

SUSSMAN & WATKINS                          MICHAEL A. DEEM, ESQ.
Attorney for Plaintiff
145 Main Street, 2nd Floor
Ossining, New York 10562


HON. ERIC T. SCHNEIDERMAN                RYAN W. HICKEY, ESQ.
Attorney General for the                        Assistant Attorney General
State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff Michael Simpson ("Simpson" or "Plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Dkt. No. 1

("Compl.").  Presently before the Court is defendants' motion, pursuant to Federal Rules of

Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss portions of plaintiff's complaint.  Dkt.

------

        [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

No. 38.  Plaintiff has opposed the motion.  Dkt. No. 48.  For the following reasons, it is

recommended that defendants' motion to dismiss be granted.


# I. BACKGROUND

The facts are related herein in the light most favorable to plaintiff as the non-moving

party.  See subsection II(A) infra.  In June 2013, plaintiff was confined in the honor dorm at

Mid-State Correctional Facility ("Mid-State C.F.").[2]  Compl. ¶ 13, 14.  In July 2013,

defendant Corrections Officer S. Owens ("S. Owens") repeatedly and publicly referred to

plaintiff as a child molester, a "baby raper," and a "baby toucher."  Id. ¶ 15.  Plaintiff filed a

grievance with respect to S. Owen's behavior.  Id.  Sgt. Vincent Cuda, III ("Cuda")

threatened plaintiff in an attempt to persuade him to withdraw the grievance against S.

Owens.  Id. ¶ 16.  On August 4, 2013, plaintiff, along with other inmates, filed a joint

grievance against S. Owens alleging harassment and mistreatment.  Compl. ¶ 17.

Defendants Corrections Officers W. Owens, Nichols, and John Does 1-5 conspired to

retaliate against plaintiff and the other grievants and "repeatedly hit[] them with closed fist

punches over the course of several days and verbally threaten[ed] their personal safety."

Id. ¶ 18.  S. Owens, W. Owens, Nichols and John Does 1-5 knew about the aforementioned

conduct and failed or refused to intervene on plaintiff's behalf.  Id. ¶ 20.  Moreover, Cuda

was aware of S. Owens' history of abusing and endangering inmates and failed to discipline

S. Owens.  Id. ¶ 24.  Plaintiff further alleges that defendant John C. Colvin ("Colvin"), the

Superintendent at Mid-State C.F., was aware of the various grievances filed against

---

[2] Plaintiff's underlying sentence did not involve charges related to sexual abuse or child molestation.
See Compl. ¶ 14.

personnel for excessive force but refused to correct the misconduct.  Compl. ¶ 74.

On September 2, 2013, plaintiff telephoned his mother regarding his conditions of confinement.  Compl. ¶ 22.  Plaintiff's mother then contacted defendant Investigator Brian Oliver ("Oliver").  Id.  Oliver met with plaintiff and attempted to persuade him to withdraw his grievance.  Id. ¶ 23.  Plaintiff refused.  Id. ¶ 23.  Oliver failed to intervene in order to prevent the ongoing physical assaults against plaintiff and, on September 3, 2013, Oliver filed false disciplinary charges against plaintiff.  Id. ¶ 25.  At a subsequent disciplinary hearing related to those charges, plaintiff demonstrated that the charges were fabricated and the hearing officer adjourned the hearing to discuss the matter with Oliver.[3]  Id.

On September 19, 2013, plaintiff was transferred to Greene Correctional Facility ("Greene C.F.").  Id. ¶ 26.  Plaintiff was housed in F-1 Dorm with members of the Bloods gang.  Id.  On September 27, 2013, there was a physical altercation in F-1 involving corrections officers and members of the gang.  Id. ¶ 31.  During the altercation, other prisoners, most of whom were gang members, began to break and throw objects inside F-1. Id.  Additional corrections personnel were called to respond and regain control over F-1. Compl. ¶ 31.  Plaintiff did not participate in the altercation nor was he involved in any destruction of property.  Id.

On September 28, 2013, defendant Lt. Michael Overbaugh ("Overbaugh") interviewed plaintiff with respect to the altercation, and plaintiff explained that he was not involved.  Id. ¶ 33.  On September 29, 2013, Overbaugh interrogated plaintiff for a second time about the incident and also asked plaintiff questions about his joint grievance against S. Owens.  Id. ¶

---

[3] The complaint lacks any information with respect to the "subsequent hearing" including the date, identity of the hearing officer, charges or determination.

36. When plaintiff refused to implicate another prisoner in the incident, Overbaugh struck plaintiff in the face. Compl. ¶ 37.

On September 30, 2013, Overbaugh interrogated plaintiff for a third time. Id. ¶ 37. Overbaugh ordered Catina and a John Doe defendant to handcuff plaintiff to a chair and then, on Overbaugh's command, Catina or John Doe struck plaintiff in the back of the head. Id. Catina then burned Plaintiff's upper lip with a small cigar. Id. Plaintiff screamed for help during the assault but the John Doe(s) in the hallway failed to intervene. Id. Upon the completion of the third interview, plaintiff was placed in the Special Housing Unit ("SHU").[4] Compl. ¶ 38. Plaintiff was repeatedly beaten by officers, including defendant C.O. Mark Lasher ("Lasher"), for several days. Id. Plaintiff was struck in the back, ribs, legs, shoulders, and testicles with closed fists, booted feet, and objects. Id.

On September 30, 2013, Overbaugh conducted a follow-up investigation and wrote a report. Compl. ¶ 39. The report indicated that two prisoners were responsible for the disturbance and identifies various prisoners that were placed in the SHU for creating a disturbance, violent conduct, rioting, interference, being out of place and threats. Id. ¶ 40. The report did not refer to plaintiff. Id.

On October 1, 2013, Overbaugh wrote an inmate misbehavior report alleging that Plaintiff participated in the group disturbance. Compl. ¶ 42. The report was based upon information supplied by Lasher and other prisoners, who were coerced by Lasher into

---

[4] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ...." N .Y. Comp.Codes R. & Regs. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

writing fraudulent statements.  Id. ¶¶ 42, 43.

On October 2, 2013, Lasher wrote a fraudulent report, to support Overbaugh's report, indicating that he observed plaintiff attempt to open a door in F-1 to gain access to an outdoor porch.  Compl. ¶ 45.  On October 3, 2013, C.O. DeVoe wrote a report regarding the incident and did not reference plaintiff in that report.[5]  Id. ¶ 47.  Subsequently, plaintiff was found guilty of the allegedly fraudulent disciplinary charges and was sentenced to one year in the SHU.[6]  Id. ¶¶ 49, 58.  On October 12, 2013, plaintiff's parents visited him at Greene C.F.  Id. ¶ 51.  Plaintiff explained that he was tortured and displayed his wounds for his parents.  Id.  Plaintiff's father contacted politicians who, in turn, contacted Commissioner Anthony Annucci ("Annucci").  Id. ¶¶ 51, 52.  Thereafter, the beatings continued and increased in severity.  Id. ¶ 52.

On October 16, 2013, plaintiff wrote a ten-page letter to Annucci regarding his conditions of confinement.[7]  Id. ¶ 53.  Plaintiff "believes" that Annucci told Superintendent Brandon Smith ("Smith"), the Superintendent at Greene, C.F., about plaintiff's conditions of confinement.  Id. ¶ 55.  On October 16, 2013, plaintiff also wrote to Smith regarding his conditions of confinement.[8]  Compl. ¶ 55.

On October 29, 2013, Plaintiff was transferred to Ulster Correctional Facility ("Ulster C.F.").  Id. ¶ 59.  While in transit, Catina told John Doe, an employee of Ulster C.F., that

---

[5] DeVoe is not a named defendant herein.

[6] The complaint does not contain any information regarding any disciplinary hearing that occurred as a result of Lasher's report including the date, hearing officer, charges or determination.

[7] The letter is not annexed as an exhibit to the complaint.

[8] The letter is also not annexed as an exhibit to the complaint.

plaintiff "beat up" a correction officers at Greene C.F. and asked the employee, "[y]ou don't have cameras in you box [SHU], right?" Id. Shortly thereafter, plaintiff was stripped naked and hit in the back, ribs, legs, and shoulders with a chain, wooden stick, closed fists, and boots by two John Does. Id. ¶ 61. Plaintiff was also repeated slammed into the floor. Id. ¶ 61. As a result, plaintiff suffered blood in his urine, back spasms, and severe pain. Id. Later the same day and the next morning, plaintiff was assaulted again by two John Doe officers in the SHU. Id. ¶¶ 63, 64.

On October 31, 2013, plaintiff was transferred to Mid-State C.F. Id. ¶ 66. On November 1, 2013, plaintiff was assigned to three months in the SHU at Mid-State C.F. Compl. ¶ 68. On November 15, 2013, defendant Sgt. Klein ("Klein") took pictures of plaintiff's injuries from "numerous beatings." Id. ¶ 69.

Plaintiff alleges that: (1) Overbaugh, Catina, Nichols, W. Owens, and John Does 1-25 violated his constitutional rights under the Eighth Amendment through their use of excessive force; (2) Annucci, Colvin, Smith, Overbaugh, Catina, Cuda, Nichols, S. Owens, Klein, W. Owens, Oliver, Jane Doe, and John Does 1-25 failed to intervene; (3) Annucci, Colvin, Overbaugh, Catina, Cuda, S. Owens, Klein, W. Owens, Oliver, Jane Doe, and John Does 1-25 conspired to interfere with his civil rights; (4) Colvin and Smith failed to supervise; and (5) Overbaugh, Oliver, and John Does 1-25 violated plaintiff's right to due process.[9] See generally, Compl. Plaintiff seeks compensatory and punitive relief, as well as attorney's fees.

---

[9] Although Lasher is named as a defendant, plaintiff has not asserted a cause of action against Lasher.

## II. DISCUSSION[10]

Defendants move to dismiss the following claims: (1) failure to supervise/intervene against Annucci, Smith and Colvin; (2) due process; (3) conspiracy; and (4) failure-to-intervene against S. Owens, W. Owens, Nichols, Cuda, and Klein.[11]

### A. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the

---

[10]  All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached hereto.

[11]  Defendants have not moved to dismiss the following claims: (1) the First Cause of Action (Excessive Force) against Overbaugh, Catina, Nichols, W. Owens and John Does 1-25; and (2) the Second Cause of Action for failure to intervene as against Colvin, Smith, Overbaugh, Catina, Oliver, Jane Doe, and John Does 1-25.

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550

U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement

. . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of illegal [conduct] .")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009)

(holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief

that is plausible . . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at

555 (citations omitted). While a complaint attacked under the standard set forth in Rule

12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant
> is entitled to "special solicitude," . . . that a pro se litigant's
> submissions must be construed "liberally,". . . and that such
> submissions must be read to raise the strongest arguments that
> they "suggest," . . . . At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . . or
> arguments that the submissions themselves do not "suggest," . . .
> that we should not "excuse frivolous or vexatious filings by pro se
> litigants," . . . and that pro se status "does not exempt a party from
> compliance with relevant rules of procedural and substantive law
> . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).[12]  Assertions of personal involvement that are merely speculative

---

[12] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v.

are insufficient to establish a triable issue of fact.  See e.g., Brown v. Artus, 647 F.Supp.2d 190, 200 (N.D.N.Y. 2009).

Plaintiff claims that Annucci, Smith and Colvin were personally involved in his constitutional deprivations based upon letters and grievances.[13]  To the extent that plaintiff seeks to establish defendants' knowledge of his complaints through letters, such an attempt must fail.  Until recently, a plaintiff's claim that he sent a letter or grievance to a defendant, where the defendant did not take action on the letter or respond, was generally insufficient at the pleading stage to establish notice and personal involvement.  Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . ."); but see Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.").  However, the Second Circuit recently concluded that,

> [a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference—if his amended complaint contained factual

---

Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cty., 743 F. Supp. 2d 175, 185 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster ...."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

[13] Plaintiff opposes defendants' motion to dismiss claiming that the allegations against Annucci are limited to "failure to intervene" and not "failure to supervise." Dkt. No. 48 at 4.  Regardless of the substance of the allegation against Annucci, to sustain a cause of action under section 1983, plaintiff must first sufficiently plead personal involvement.

> allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means—that the [defendant] in fact received the Letter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained.

Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013); see also Toliver v. City of New York, 530 F. App'x 90, 93 (2d Cir. 2013) (citing Grullon, 720 F.3d at 141-42); Ferrer v. Fischer, No. 9:13-CV-0031, 2014 WL 1763383, at *2 (N.D.N.Y. May 1, 2014).

Here, plaintiff does not provide sufficient factual detail to support his claim that the letters to Annucci and Smith establish personal involvement. He does not allege that he sent the letters to the proper addresses by appropriate means, or that defendants received the letters and read them. See Grullon, 720 F.3d at 140-41. Thus, he has not established personal involvement through the sending of letters. See id. Moreover, to the extent that plaintiff attempts to establish personal involvement on behalf of Smith and Colvin due to his filing of grievances, that claim also fails. The complaint lacks any information regarding when plaintiff filed those grievances, what specific issues/content were addressed in those grievances, or who the grievances were filed against. Thus, plaintiff has failed to plausibly allege that Annucci, Smith, or Colvin had personal knowledge of the alleged constitutional violations.

Accordingly, it is recommended that defendants' motion to dismiss all claims against Annucci, Smith, and Colvin, be granted due to lack of personal involvement, without prejudice.

### C. False/Fraudulent Reports

Plaintiff alleges that Overbaugh and Oliver denied him "a fair hearing by presenting

fraudulent evidence at his disciplinary hearings, resulting in atypical hardships of 90 and 365 days confinement in [SHU]." Compl. ¶ 88. Defendants argue that plaintiff failed to sufficiently plead any due process claim against Overbaugh or Oliver because neither served as plaintiff's hearing officer in any disciplinary hearing. Dkt. No. 38-1 at 12. Moreover, defendants contend that the complaint lacks any allegation that plaintiff suffered any procedural deprivation. See id.

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted).

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). This standard requires a prisoner to establish that the deprivation was "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (citation omitted); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). Although not a dispositive factor, the duration of a disciplinary confinement is a significant factor in determining atypicality. See Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted). The Second Circuit has not established "a bright line rule that a certain period of [Special Housing Unit] SHU confinement automatically fails to implicate due process rights." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citations omitted). Instead, the Second Circuit

has provided guidelines that "[w]here the plaintiff was confined for an intermediate duration — between 101 and 305 days — development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required." Id. at 64-65 (citing Colon, 215 F .3d at 232).

The Fourteenth Amendment due process protections afforded a prison inmate do not equate to "the full panoply of rights due to a defendant in a criminal prosecution." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). An inmate is entitled to

> (a) written notice of the claimed violations . . . ; (b) disclosure [to the prisoner] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body . . .; and (f) a written statement by the fact finders as to the evidence relied on . . . .

Wolff v. McDonald, 418 U.S. 539, 559 (1974) (internal quotation marks and citation omitted).

Here, plaintiff claims that he was confined to the SHU for "90 and 365 days." Compl. ¶ 88. Even assuming plaintiff could establish that he suffered a deprivation of a liberty interest, the complaint fails to state a viable cause of action with respect to any procedural violations. Plaintiff's "procedural" claims are based upon the allegation that Overbaugh and Oliver lodged false or fraudulent misbehavior reports. Compl. ¶ 25, 42. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie, 105 F.3d at 862 (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988)); accord, Pittman v. Forte, No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002); see also Santana v.

13

Olson, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief."). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been an additional violation, such as "retaliation against the prisoner for exercising a constitutional right." Boddie, 105 F.3d at 862. In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting a prisoner's "but for" argument as to the guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted). "The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report. In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." Santana, 2007 WL 2712992, at *2.

Here, plaintiff has not set forth a cause of action for retaliation.[14] Plaintiff does not allege that either Overbaugh or Oliver presided over any disciplinary hearing or proceeding. Indeed, the complaint lacks information regarding any disciplinary hearing, including the date, charges, identity of hearing officers, or the outcome of any hearing. Moreover, plaintiff has not alleged that he suffered any constitutional deprivation during those hearings. To wit, plaintiff does not claim that he received inadequate notice, that he was denied an opportunity to be heard at a hearing, that he was precluded from presenting

_____

[14] Plaintiff is represented by counsel in this case. Therefore, the Court is not obligated to construe his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (stating that "the allegations of the pro se complaint [are held] to less stringent standards that formal pleadings drafted by lawyers"). Plaintiff does not allege any cause of action, against any defendant, for retaliation. Moreover, Plaintiff's counsel does not address or attempt to assert any retaliation claim in his opposition to defendants' motion.

witnesses or evidence at any hearing, or that the hearing determination was not supported by some evidence.

Therefore, to the extent that plaintiff alleges that defendants Overbaugh and Oliver issued false misbehavior reports, the complaint fails to state a claim upon which relief may be granted. Moreover, as plaintiff has failed to allege that he suffered any constitutional deprivation at any subsequent disciplinary hearing, based upon the misbehavior reports, it is recommended that defendants' motion to dismiss plaintiff's due process claims be granted, withoyt prejudice.

## D. Conspiracy

In response to defendants' motion to dismiss, Plaintiff voluntarily withdraws his fifth cause of action for conspiracy.[15] Accordingly, it is recommended that this portion of defendants' motion be granted.

## E. Failure to Intervene

Plaintiff claims that Klein, S. Owens, Cuda, Nichols and W. Owens "failed to intervene in the use of excessive force."[16] Compl. ¶ 81, 82. The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. See Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults may be

---

[15] This cause of action was misnumbered in the complaint as "Count IV." Compl. ¶ 87, 88.

[16] As discussed supra, plaintiff has failed to establish any personal involvement on behalf of Annucci for any constitutional violations.

sufficient to state an Eighth Amendment failure to protect claim.  See Rogers v. Artus, No. 13-CV-21M, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013).  An officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate.  See Tafari v. McCarthy, 714 F. Supp. 2d 317, 342 (N.D.N.Y. May 24, 2010).  To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) "possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force."  Cicio v. Lamora, No. 09:CV-431, 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010) (citing Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).  In order to succeed on a claim of failure to protect, the inmate plaintiff "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk."  See Walsh v. Goord, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (citing Baines v. City of New York, 01-Civ-2645 (PKC/GWG), 2004 WL 213792, at *6 (S.D.N.Y. Feb. 5, 2004)).  In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety.  Morales v. New York State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988).

Plaintiff has not provided any facts related to the use of excessive force at Mid-State C.F. including dates of the use of force, the location of the incidents, the extent of force used, or injuries allegedly sustained in any specific incident.  The complaint merely states that W. Owens and Nichols, "repeatedly hit [plaintiff and other grievants] with closed fist

16

punches over the course of several days." Compl. ¶ 18. Without any additional information regarding the alleged assaults, the complaint does not present any plausible claim for failure-to-intervene in any such assault. Plaintiff has not pleaded that defendants had "a realistic opportunity to intervene to prevent the harm from occurring." De Michele v. City of New York, No. 09-Civ.-9334 (PGG), 2012 WL 4354763, at *17 (S.D.N.Y. Sept. 24, 2012) (citing inter alia Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)) (internal quotation marks omitted).

Further, with respect to defendant Klein, the complaint lacks any allegations or information to sufficiently establish that Klein was responsible for any constitutional violation. Plaintiff alleges that Klein photographed his injuries on November 15, 2013 and substituted the photographs with other pictures taken by "medical personnel" to "cover-up" plaintiff's injuries. Compl. ¶ 69, 70. It appears that plaintiff is suggesting that Klein substituted later-taken pictures for pictures taken shortly after plaintiff received his injuries in order to make his injuries appear less severe. This conclusory claim, without more, fails to demonstrate that Klein was personally involved in any deprivation rising to the level of a section 1983 violation. See Barnes v. Fedele, 760 F. Supp. 2d 296, 304-05 (W.D.N.Y. 2011) (the plaintiff's conclusory allegations of a "cover up" due to a "less than thorough investigation" fail to state a claim) (citing Twombly, 550 U.S. at 544). Furthermore, it appears that plaintiff is attempting to suggest that Klein was involved in a conspiracy to prevent the severity of his injuries from being discovered. However, plaintiff does not claim that Klein conspired with or "acted in concert" with any other individual, as is required for a

conspiracy claim.[17]  Furthermore, as discussed supra, plaintiff has voluntarily withdrawn his conspiracy claims.  Accordingly, it is recommended that plaintiff's failure-to-intervene claims against S. Owens, W. Owens, Nichols, Cuda, and Klein be dismissed without prejudice.


### F.  Verbal Harassment

Plaintiff contended that defendant Owens called plaintiff a "child molester," "baby raper," and "baby toucher."  Compl. at ¶¶ 1, 15-16.  Further, he alleged that defendant Cuda threatened him by saying that he "won't be smiling" soon.  Id. at ¶¶ 19-20, 24.  In addition, plaintiff alleged that defendant Catina asked plaintiff whether he "liked to file grievances" and made threats against plaintiff in order to persuade him to withdraw his grievance.  Id. at ¶¶ 27.  Further, plaintiff contends that two unnamed officers "stated publicly and loudly that plaintiff was a 'confidential informant,' causing him to face threats from other inmates" Id. ¶ 34.

Allegations of verbal harassment are insufficient to support a Section 1983 claim. Johnson v. Eggersdorf, 8 F. App'x 140, 143 (2d Cir. 2001) (citing Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.")); see also Hendricks v. Boltja, 20 F. App'x 34, 36 (2d Cir. 2001) (holding that "verbal harassment was not actionable" in case where officer, inter alia, told inmate to "get [his] black ass out of the library" and threatened to "smash [his] head open"); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment

---

[17]  "To survive a motion to dismiss, a conspiracy claim under 42 U.S.C. § 1983 must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal."  Vega v. Artuz, 610 F. Supp. 2d 185, 202 (N.D.N.Y. 2009).

or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983").

Plaintiff asserts, in his opposition to the motion, that he did not "intend" to assert a claim "based exclusively upon . . . verbal harassment." <u>See</u> Dkt. No. 48 at 4. Regardless of plaintiff's intentions, although not pleaded as a separate cause of action, plaintiff's complaint suggests claims of verbal harassment. Thus, insofar as plaintiff's complaint may raise a claim of verbal harassment, such claims must be dismissed. Accordingly, it is recommended that insofar as plaintiff's complaint can be read as suggesting defendants Owens, Cuda, Catina, and unnamed or John Doe corrections officers violated plaintiff's constitutional rights by verbally harassing him or by failing to intervene to prevent such verbal harassments, such portions be dismissed with prejudice.

### III. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 38) be **GRANTED**, and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court**. FAILURE TO OBJECT TO THIS REPORT WITHIN**

19

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services,

892 F.2d 15, 16 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**


Dated: September 28, 2015
      Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge